The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: March 31 2022

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | Case No. 18-33612 |
| ) | |
| Trevor W. Poole, ) | Chapter 7 |
| ) | |
| Debtor. ) | Adv. Pro. No. 21-03029 |
| ) | |
| Trevor W. Poole, ) | Hon. John P. Gustafson |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Maxx Fitness Clubzz. ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OF DECISION AND ORDER

This adversary proceeding is before the court upon Plaintiff Trevor W. Poole's ("Plaintiff-Debtor" or "Debtor") Complaint for Violation of the Automatic Stay and Discharge Injunction ("Complaint"). [Doc. #1].[1] Defendant Maxx Fitness Clubzz ("Defendant-Creditor" or "Maxx

---

1/ This court previously recognized that the traditional way to bring an action for violation of the discharge injunction, and to find a defendant in contempt of the court that issued the discharge order, is by motion. But, because

Fitness") is a prepetition unsecured creditor, as listed on Amended Schedule E/F in Plaintiff-Debtors' Chapter 7 Case in this court. [No. 18-33612, Doc. #65, p. 4].

A review of the record reflects that no answer or other response to any pleading or order in this adversary proceeding has ever been filed by Defendant-Creditor. For the reasons set forth below, pursuant to Fed. R. Civ. P. 55, made applicable by Fed. R. Bankr. P. 7055, Plaintiff-Debtors' Motion for Default Judgment will be **GRANTED in part and DENIED in part.**

The district court has jurisdiction over the Chapter 7 bankruptcy case and all civil proceedings arising under Title 11 or arising in or related to that case, including this adversary proceeding. 28 U.S.C. §1334(a) and (b). The Chapter 7 case and all proceedings arising in or related to that case, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. §157(a) and General Order No. 2012-07 of the United States District Court for the Northern District of Ohio. Proceedings to enforce the discharge injunction are core proceedings that this court may hear and decide. 28 U.S.C. §157(b)(2). As a core proceeding that stems from the bankruptcy itself, Plaintiff-Debtor's claims are within the court's constitutional authority to enter final judgment. *DeWine v. Scott (In re Scott)*, 566 B.R. 471, 474 (Bankr. N.D. Ohio 2017)(citing *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.E.2d 475 (2011)).

A defendant's failure to answer the complaint does not, standing alone, entitle a plaintiff to a default judgment as a matter of right. *Westfield Nat'l Ins. v. Young (In re Young)*, 2018 WL 1219544 at 2, 2018 Bankr. LEXIS 624 at *4 (Bankr. N.D. Ohio Mar. 7, 2018); *Am. Express Centurion Bank v. Truong (In re Truong)*, 271 B.R. 738, 742 (Bankr. D. Conn. 2002). "In determining whether a default judgment is appropriate, 'the court should [accept] as true all of the

---

an adversary proceeding provides a defendant with more, and not less, procedural protections than in a contested matter brought by motion, courts routinely hear contempt actions brought as adversary proceedings. *Bahnsen v. Discover Fin. Serv., Inc. (In re Bahnsen)*, 547 B.R. 779, 785 (Bankr. N.D. Ohio 2016)(citations omitted).

factual allegations of the complaint, except those relating to damages' and afford plaintiff 'all reasonable inferences from the evidence offered.'" *In re Young*, 2018 WL 1219544 at 2, 2018 Bankr. LEXIS 624 at *4 (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). "Yet the court must decide whether the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit mere conclusions of law." *Id.* (citing *Smith v. Household Fin. Reality Corp. of N.Y. (In re Smith)*, 262 B.R. 594, 597 (Bankr. E.D.N.Y. 2001)).

The court finds that notice, including the initial service of the summons and the Complaint, pursuant to Fed. R. Bankr. P. 7004(b)(7), Ohio R. Civ. P. 4.2(F)-(J), and Fed. R. Civ. P. 4(h)(1)(B), as applicable under Fed. R. Bankr. P. 7004(a)(1), has been duly and properly served upon Defendant-Creditor at all stages of this adversary proceeding. Moreover, as a result of being properly served with an alias summons and the Complaint and its ensuing default, Defendant-Creditor has impliedly consented to entry of default judgment against it by the bankruptcy court. *See, Messer v. Fyre Media Inc. (In re Fyre Festival LLC)*, 611 B.R. 735, 740 (Bankr. S.D.N.Y. 2020). Thus, having found that service of the summons and Complaint on Defendant-Creditor is due and proper, the court also finds that Defendant-Creditor has failed to plead, answer, or otherwise defend this action as required by the applicable rules of procedure.

**FACTS**

On November 16, 2018, Plaintiff-Debtor filed a "skeleton" Petition. [No. 18-33612, Doc. #1]. Attached to Plaintiff-Debtor's Petition was a creditor matrix. [No. 18-33612, Doc. #1, pp. 9-16]. The Chapter 7 case was filed as a "non-consumer" case, with a declaration that the Plaintiff-Debtor had primarily business debts. [No. 18-33612, Doc. #1, p. 6]. Defendant-Creditor was not listed on the Plaintiff-Debtor's matrix as a creditor. [No. 18-33612, Doc. #1, pp. 9-16].

On December 5, 2018, the Debtor filed the balance of the required documents, including

the Schedules. [No. 18-33612, Doc. #10, p. 6]. Defendant-Creditor was not listed on Schedule F, [No. 18-33612, Doc. #10, pp. 20-38], nor was the gym membership listed as an executory contract on Schedule G. [No. 18-33612, Doc. #10, p. 39]. The Plaintiff-Debtor's Statement of Intention [Official Form 108] also did not include the Defendant-Creditor. [No. 18-33612, Doc. #10, pp. 64-65]. In short, Defendant-Creditor was not listed anywhere in the initial bankruptcy filings.

On or about February 11, 2019, the Chapter 7 Trustee filed a Request for Notice to File Claims, [No. 18-33612, Doc. #20], and May 22, 2019, was set as the claims bar date. [No. 18-33612, Doc. #20, p. 1].

An Order of Discharge was entered on March 21, 2019. [No. 18-33612, Doc. #27].

After the entry of the Order of Discharge, Plaintiff-Debtor began receiving collection notices from Defendant-Creditor regarding unpaid gym membership dues. [Doc. #19, p. 2].

On April 1, 2021, an Amendment to Schedules E/F was filed, together with an amendment to the Matrix. [No. 18-33612, Doc. #65]. The Amendments listed two additional creditors, one of which was "Maxx Fitness Clubzz." [*Id.*, at pp. 4 & 6].

Although Plaintiff-Debtor owed Defendant-Creditor unpaid membership dues at the commencement of the bankruptcy case, [Doc. #1, ¶10], April 1, 2021, was the first time Defendant-Creditor was listed anywhere in Plaintiff-Debtor's Schedules and/or Matrix since the filing of the Petition on November 16, 2018. Thus, the listing of Maxx Fitness was more than two years and four months after Plaintiff-Debtor filed his Petition for relief.

Defendant-Creditor was served with the Amended Bankruptcy Schedules. [Doc. #1, ¶12].

Defendant-Creditor received notice of Plaintiff-Debtor's bankruptcy at some point on or after April 1, 2021, after the discharge was entered and after the deadline to file claims. [Doc. #1,

4

¶14; Doc. #17-2, p. 1; Doc. #19, p. 4].

On or about April 21, 2021, Defendant-Creditor sent, via email, a notice to Plaintiff-Debtor seeking to collect on its account. [Doc #1, p. 5; Doc. #17, p. 2].

On or about April 22, 2021, Plaintiff-Debtor sent to Defendant-Creditor a letter informing Defendant-Creditor that its collection notices were subject to the discharge order entered on March 21, 2019, and such collection notices violated the discharge injunction. [Doc. #1, p. 5; Doc. #17-2, p. 1].

Defendant-Creditor sent, via email, additional collection notices to Plaintiff-Debtor on the following dates: May 6, 2021; May 7, 2021; May 8, 2021; May 9, 2021; and May 10, 2021. [Doc. #1, p. 5; Doc. #17, p. 3].

On May 18, 2021, Plaintiff-Debtor filed this Adversary Proceeding. [Doc. #1]. At the time of the filing of the Complaint, Plaintiff-Debtor's bankruptcy case remained open for administration. [Doc. #1, ¶19]. At the time of the filing of the Complaint, no distribution had been made in Debtor's Chapter 7 case.

On May 18, 2021, the Clerk issued a summons and notice of pre-trial conference. [Doc. #2]. Plaintiff-Debtor's return on service shows that the summons and Complaint were properly served on Defendant-Creditor at the address listed in Plaintiff's Amended Schedule E/F, [No. 18-33612, Doc. #65, p. 4; Doc. #3], to an officer at Defendant-Creditor's place of business by regular U.S. mail, postage pre-paid. [Doc. #3]. The summons required an Answer or other response to the Complaint, and a pre-trial scheduling conference was set for June 29, 2021. [Doc. #2].

On June 29, 2021, the court held the initial pre-trial scheduling conference. Plaintiff-Debtor appeared at the hearing via telephone. There was no appearance by or on behalf of Defendant-Creditor and no answer or other response to the Complaint was filed and served by

Defendant-Creditor. The court granted Plaintiff-Debtor's oral motion for a Clerks' Entry of Default and required that a Motion for Default Judgment be filed within fourteen days. [Doc. #5]. On July 12, 2021, the Clerk's Entry of Default was docketed pursuant to Fed. R. Civ. P. 55(a), made applicable to these proceedings under Fed. R. Bankr. P. 7055. [Doc. #6].

On July 1, 2021, Defendant-Creditor called Plaintiff-Debtor on his personal line seeking to collect on its account. [Doc. #17, p. 3].

Plaintiff-Debtor filed his Motion for Default Judgment ("Motion") on July 13, 2021. [Doc. #7]. The court scheduled a hearing on the Motion, notice of which the Clerk mailed to Defendant-Creditor at the address set forth in Plaintiff-Debtor's Amended Schedule E/F, [Doc. ##10, 11], in care of "Chief Operating Officer" of Defendant-Creditor. [Doc. #11].

The court held a hearing on the Motion on August 17, 2021. Plaintiff-Debtor appeared at the hearing via telephone. There was no appearance by or on behalf of Defendant-Creditor. At the August 17th hearing, the court informed Plaintiff-Debtor it would grant its Motion, and a further hearing would be scheduled to assess and determine damages, [Doc. ##13, 14], notice of which the Clerk mailed to Defendant-Creditor at the address set forth in Plaintiff-Debtor's Amended Schedule E/F. [Doc. ##13, 16]. On September 1, 2021, Plaintiff-Debtor filed his Memorandum in Support of Damages. [Doc. #17].

On September 14, 2021, the court held an evidentiary hearing on damages. Plaintiff-Debtor appeared at the hearing via telephone. There was no appearance by or on behalf of Defendant-Creditor. At the evidentiary hearing, and upon further review of the record, the court raised the following issue: whether damages could be assessed given the concern that Defendant-Creditor was not listed, or provided notice, until more than two years after the case was filed. The court gave counsel for Plaintiff-Debtor fourteen days to file any additional arguments regarding

21-03029-jpg    Doc 20    FILED 03/31/22    ENTERED 03/31/22 15:29:39    Page 6 of 13

the concerns raised at the hearing. On September 27, 2021, Plaintiff-Debtor filed a Further Memorandum in Support of Damages addressing these concerns. [Doc. #19].

The record reflects that on October 4, 2021 the Chapter 7 Trustee filed the "Trustee's Final Report" stating funds available for distribution, with the Chapter 7 Trustee's proposed distribution attached as Exhibit D. [No. 18-33612, Doc. #98, pp. 1-2, 16-18]. No objections to the Chapter 7 Trustee's report or proposed distribution were filed, timely or otherwise.

The docket also shows that, on February 22, 2022 the Chapter 7 Trustee's Report of Distribution was reviewed by the United States Trustee, Andrew R. Vara. [No. 18-33612, Doc. #104].

As of the date of this Memorandum of Decision, it appears the Chapter 7 Trustee has made distributions to creditors. However, Defendant-Creditor had over six months to file a claim in the main bankruptcy case after notice of the filing was provided. Nevertheless, Defendant-Creditor never filed a claim in the main bankruptcy case.

Defendant-Creditor could have filed a tardily proof of claim, allowing it to fully participate in the distribution under §726(a)(2)(C), but did not do so.

Because no claim was filed, the Chapter 7 Trustee's proposed distribution did not include a distribution to Defendant-Creditor. [No. 18-33612, Doc. #98, pp. 16-18].

## LAW

Plaintiff-Debtor's Second Count in his Complaint alleges a violation of the discharge order. However, the Complaint, Memorandum in Support of Damages, and the Exhibits fail to meet Debtor's burden to establish that Defendant-Creditor had "no objectively reasonable basis for concluding that" its collection notices might be lawful. *Taggart v. Lorenzen*, ___ U.S. ___, ___, 139 S.Ct. 1795, 1799, 204 L.Ed.2d 129 (2019).

The question raised at the evidentiary hearing was whether the debt, listed more than two years and four months after Plaintiff-Debtor filed his Petition for relief was discharged under existing case law, and whether or not there was a "fair ground of doubt" as to whether Defendant-Creditor's conduct might be lawful under *Taggart*. *Id.* at 1804.

Plaintiff-Debtor's Further Memorandum in Support of Damages, [Doc. #19], addressed this question regarding the effect of the delay in listing and notifying Maxx Fitness. Plaintiff-Debtor argued that the Maxx Fitness debt was discharged despite the delay in scheduling the debt.[2] Plaintiff-Debtor's argument is primarily based on *Kowalski v. Romano (In re Romano)*, 59 F. App'x 709 (6th Cir. 2003)(unpublished)(per curiam).[3] In that case, the Sixth Circuit Court of Appeals held that if a creditor's claim is listed or scheduled in time to permit the timely filing of a proof of claim so that the creditor can participate in the distribution of assets from the Chapter 7 debtor's estate, the debt will be discharged. Plaintiff-Debtor argues that *Romano*'s holding means that the collection notices were in violation of §524(a) despite the late notice provided to Maxx Fitness. [Doc. #19, p. 5]. Because of the initial lack of notice, and no distribution having been made, Defendant-Creditor could have filed a proof of claim that would be treated as timely under §726(a)(2)(C). Under this statutory provision, such claim would have been entitled to distribution with other unsecured creditors despite being filed after the claims bar date. [*Id.* at pp. 5-6]. Accordingly, the debt owed to Maxx Fitness would be discharged even though Defendant-

---

2/ Plaintiff-Debtor's Further Memorandum in Support of Damages, [Doc. #19], also argues that the Order finding that Defendant-Creditor violated the discharge injunction, [Doc. #14], is *res judicata*. This court, however, must decide whether the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit mere conclusions of law. *Westfield Nat'l Ins. v. Young (In re Young)*, 2018 WL 1219544 at 2, 2018 Bankr. LEXIS 624 at *4 (Bankr. N.D. Ohio Mar. 7, 2018). Moreover, no judgment has been entered in this adversary proceeding. Additionally, this court would not need to determine the *res judicata* effect of any judgment rendered in this adversary proceeding, that task is for the court in a subsequent action in which previous adjudication is raised as a defense. *See, Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 n.11 (6th Cir. 1997).

3/ *See also, Creative Enters. HK, LTD. v. Simmons (In re Simmons)*, 2021 WL 3744890 at *2, 2021 Bankr. LEXIS 2302 at **4-6 (Bankr. M.D. Fla. Aug. 24, 2021).

Creditor received notice of Plaintiff-Debtor's bankruptcy after the discharge was entered and after the claims bar date had passed. [*Id.*] Plaintiff-Debtor asserts that the collection notices were therefore a contemptuous violation of the discharge injunction because the debt owed to Maxx Fitness had been discharged. [*Id.*]

For the reasons that follow, this court disagrees with Plaintiff-Debtor's conclusion based on *Taggart*'s holding, requiring that there must first be "no objectively reasonable basis for concluding that" a creditor's conduct might be lawful. *Taggart*, 139 S.Ct. at 1802. Only after that burden has been met is a bankruptcy court authorized to find a creditor in contempt. *Id.*

First, *In re Romano* was not selected for publication. The Panel in *Romano* determined that the opinion would not be recommended for full text publication pursuant to Local Rule 28(g).[4] Thus, *In re Romano* is a nonprecedential, per-curiam opinion. *See,* 6 Cir. R. 32.1. Since unpublished decisions are not binding precedent,[5] they cannot provide an "objectively reasonable basis" for concluding that Defendant-Creditor's conduct was unlawful. *Taggart*, 139 S.Ct. at 1799; *cf. Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002)(noting that unpublished cases could not have provided any "assurance to a reasonable official" that his conduct would have been unlawful).

---

4/ Before the Federal Rules of Appellate Procedure were amended in 2006, Local Rule 28(g) for the Sixth Circuit addressed "unpublished" authorities. In 2003, Local Rule 28(g) provided:

> Citation of Unpublished Decisions. Citation of unpublished decisions in briefs and oral arguments in this Court and the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case. If a party believes, nevertheless, that an unpublished disposition has precedential value in relation to a material issue in a case, and that there is no published opinion that would serve as well, such decision may be cited if that party serves a copy thereof on all other parties in the case and on this Court. Such service shall be accomplished by including a copy of the decision in an addendum to the brief.

*In re Diguilio*, 303 B.R. 144, 148 (Bankr. N.D. Ohio 2003); *McCallum v. Pixley (In re Pixley)*, 456 B.R. 770, 789 (Bankr. E.D. Mich. 2011). Currently, Local Rule 32.1 permits citation to "any" unpublished opinion. 6 Cir. R. 32.1(a). However, an ability to cite unpublished decisions does not transform them into binding precedent.

5/ *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 986 F.3d 633, 637 n.2 (6th Cir. 2021)(noting that the Bankruptcy Appellate Panel's finding that an unpublished decision was binding precedent was improper).

For any number of possible reasons, the Sixth Circuit determined its ruling in *In re Romano* is not to be accorded the binding precedential status that arises with publication. *See,* Bryan Garner, et al., *The Law of Judicial Precedent* 148 (2016)("In declining to publish, the court [] may be sending various signals—perhaps 'this one is very easy and routine and doesn't require much analysis,' but also quite possibly 'we're not sure about this one.'"). The Sixth Circuit's choice not to designate *In re Romano* as a published decision has consequences.

Second, *In re Romano* follows what has been described as the minority view regarding §523(a)(3), applying the "distribution approach," instead of the "plain language approach,"[6] in holding that a tardily filed claim scheduled after the claims bar date is discharged if the creditor had the opportunity to fully participate in any distribution. *See e.g.*, *Leadbetter v. Snyder (In re Snyder)*, 544 B.R. 905, 909-10 (Bankr. M.D. Fla. 2016)("Courts have taken two different approaches to this issue: the 'plain language approach' and the 'distribution approach.'" (footnotes omitted)); *Schlueter v. State Farm Mutual Ins. Co. (In re Schlueter)*, 391 B.R. 112, 116 (B.A.P. 10th Cir. 2008)("Few courts have followed the distribution approach.").[7]

---

6/ The "split of authority" on this issue is not clearly defined because of the differing fact patterns courts can be confronted with in Chapter 7 cases. For example, there appears to be a split of authority in the circuit courts as to whether an unlisted debt is discharged in a no-asset Chapter 7 case. *Compare, e.g.*, *Colonial Surety Co. v. Weizman (In re Weizman)*, 564 F.3d 526, 530-31 (1st Cir. 2009)(§523(a)(3)(A) applies in no-asset Chapter 7 cases) *with Judd v. Wolfe*, 78 F.3d 110, 114-15 (3d Cir. 1996)(§523(a)(3)(A) does not apply in no-asset Chapter 7 cases) *and Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 468-70 (6th Cir. 1998)(§523(a)(3)(A) does not apply in no-asset Chapter 7 cases). In the Sixth Circuit, there is binding precedent that such a debt is discharged. *See, Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 541-42 (6th Cir. 1985)(holding that the creditor could not prevent the debtor from reopening the bankruptcy case in order to amend the schedule of debts in a no-asset Chapter 7 case because no prejudice would result); *In re Madaj*, 149 F.3d at 470 (holding, in a no-asset Chapter 7 case, "amending the schedule of debts has no effect on the dischargeability of the debt and is, therefore, unnecessary."). But what about situations where a notice to file proofs of claims has been issued, whether or not monies are ever actually distributed? Or where the creditor has a general unsecured claim and there has been a distribution – but only to priority claims? The initial situation in this adversary proceeding at the time the complaint was filed, where a creditor has been listed after the claims bar date but before distribution in what appears to be an asset Chapter 7 case, is one scenario in a continuum of subtly different fact patterns.

7/ The actual majority/minority split is arguably either even, or with *Romano* in the majority if case law is included that does not use the current "distribution approach" / "plain language approach" terminology. *See e.g.*, *Eglin Fed. Credit Union v. Horlacher (In re Horlacher)*, 389 B.R. 257, 270 (Bankr. N.D. Fla. 2008)(describing that the "interplay of §523(a)(3)(A) and §726(a)(2)(C) has caused confusion in the courts and a split in the case law. The inconsistent

There is published authority in other circuits to the contrary, following the "plain language approach" under §523(a)(3), holding that a debt is excepted from discharge even if the creditor had knowledge in time to file a proof of claim and fully participate in the distribution, if any. *In re Schlueter*, 391 B.R. 112, 116 (B.A.P. 10th Cir. 2008)("The bankruptcy court reviewed [*Lott Furniture, Inc. v. Ricks (In re Ricks)*, 253 B.R. 734 (Bankr. M.D. La. 2000); *Kowalski v. Romano (In re Romano)*, 59 F. App'x 709 (6th Cir. 2003)] and Tenth Circuit cases and determined that the plain language approach controlled. We agree."); *Croix Oil Co. v. Mai Yer Moua (In re Moua)*, 457 B.R. 755, 759-61 (Bankr. D. Minn. 2011)("[Section] 523(a)(3) is applied according to its plain language, and strongly in mind of the orientation of the statutory text toward the *process* of bankruptcy." (emphasis in original)).

As these cases show, courts have reached different results in determining the scope of §523(a)(3). To find a violation of the discharge injunction, and award damages, a party must establish that there was no "fair ground of doubt,"[8] that the creditor violated the discharge injunction "based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* at 1802. The scope of §523(a)(3), and its relationship to §726(a)(2)(C), is unsettled and provides an objectively reasonable basis for concluding that Defendant-Creditor's conduct might have been lawful. *Id.* at 1799; *see also, Orlandi v. Leavitt Family Ltd. P'ship (In re Orlandi)*, 612 B.R. 372, 382 (B.A.P. 6th Cir. 2020)(holding clear split of authority as to whether or not the pre-petition guaranty was discharged, and the absence of any controlling case law in the Sixth Circuit, was enough to provide an objectively reasonable basis

---

decisions can be traced back to §523(a)(3)(A)'s predecessor, §17a(3) of the Bankruptcy Act," where competing lines of cases emerged following either a "strict interpretation" or a "liberal interpretation" of §17a(3) in determining whether or not an unscheduled debt was nondischargeable under §17a(3)).

8/ *Taggart*, 139 S.Ct. at 1804

11

21-03029-jpg    Doc 20    FILED 03/31/22    ENTERED 03/31/22 15:29:39    Page 11 of 13

for concluding that the creditor's conduct might be lawful).

Plaintiff-Debtor's argument that Defendant-Creditor should be found in contempt because it had notice and was aware of the discharge order would require this court to adopt the "akin to strict liability" standard the Supreme Court rejected in *Taggart*, 139 S.Ct at 1799. Instead, the Supreme Court has instructed that this court "may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred" Defendant-Creditor's conduct. *Id.* Where, as here, the relevant law is not clearly established, that leaves "a fair ground of doubt" as to whether the debt owed to Defendant-Creditor was discharged. Accordingly, Plaintiff-Debtor has not established that there was "no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* Therefore, under the standard in *Taggart*, Plaintiff-Debtor's request for damages in his Second Count of the Complaint must be denied.

Plaintiff-Debtor's First Count in his Complaint is under 11 U.S.C. §362(k), which establishes a cause of action for debtors injured by willful violations of the automatic stay. Plaintiff-Debtor was granted a discharge on March 21, 2019. [No. 18-33612, Doc. #34]. The granting of a discharge terminates the automatic stay. §362(c)(2)(C). All of Defendant-Creditor's collection notices were sent after the stay terminated. [Doc. #1, p. 5; Doc. #17, p. 3]. Thus, the court finds that Defendant-Creditor's actions did not violate the automatic stay because the stay had already terminated by operation of law.

Notwithstanding the above, the court finds that this debt would be discharged under *In re Romano* and *In re Simmons*. This court will follow *In re Romano* and hold that this debt is discharged going forward. If Defendant-Creditor takes further actions to collect after this decision becomes a final non-appealable order, those actions will violate the discharge order's

12

injunction and be in contempt of this court's discharge order. By determining that this debt is discharged, any acts to collect by Defendant-Creditor would be done with no objectively reasonable basis for concluding that its conduct might be lawful. Plaintiff-Debtor, the injured party, will be able to recover damages as a sanction for the contempt. *Bahnsen v. Discover Fin. Servs. (In re Bahnsen)*, 547 B.R. 779, 786 (Bankr. N.D. Ohio 2016).

Based on the foregoing reasons and authorities, Plaintiff-Debtor's Motion [Doc. #7], is hereby **GRANTED in part and DENIED in part.** A separate, final judgment against Defendant-Creditor in accordance with this Memorandum of Decision and Order shall be entered by the court.

**IT IS SO ORDERED.**

###